# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAMONT PEETE, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 12-1218 (EGS) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Lamont Peete's petition for a writ of habeas corpus. For the reasons discussed below, the petition will be denied and this action will be dismissed.

### I. BACKGROUND

Petitioner and his co-defendant, Jeremiah Mungo, were tried in the Superior Court of the District of Columbia on charges of first degree murder and weapons offenses. *See* Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254(d)(1) ("Pet.") at 2. "[T]he jury in . . . the first trial was unable to reach a verdict and the court declared a mistrial." *Mungo v. United States*, 987 A.2d 1145, 1147 (D.C. 2010), *cert. denied*, 131 S. Ct. 964 (2011). According to petitioner, "the jury hung 11 to 1, heavily in favor of acquittal." Pet. at 6. Petitioner and Mungo were retried in 2000. *Id.* at 2, 6. "The government presented several eyewitnesses who testified that they saw Mungo and [petitioner], both carrying pistols, enter the alley and approach the driver's side of a parked car occupied by [the decedents] Powell and Isaac," and that they saw petitioner "fire[] multiple shots into the car from a distance of two to three feet away, turn[] to leave, and

1

then fire[] a second round of shots into the car." *Mungo*, 987 A.2d at 1148. "Police found Powell slumped over the steering wheel and Isaac in the passenger's seat, both having sustained multiple gunshot wounds." *Id.*

During jury selection, the prosecutor was experiencing back pain and he found it difficult to stand for extended periods of time. *See* Pet. at 8. He "raised the possibility of conducting voir dire in the jury room instead of the courtroom." *Mungo v. United States*, 987 A.2d 1145, 1148 (D.C. 2010). "To accommodate the prosecutor's unfortunate plight, [petitioner's] counsel advocated for an alternative setting . . . in the jury room." Pet. at 3. Petitioner's presence in the jury room for the jury selection proceedings, however, required that he be "outfitted with a stun belt." *Id.* at 2. According to petitioner, trial counsel "engineered and brought about the stun belt arrangement so as to enable voir dire to take place in the jury room," *id.* at 9, without first obtaining petitioner's consent. This stun belt arrangement allegedly presented petitioner with "an unconstitutional ultimatum – to wit: either forego [his] absolute right to be present at jury selection to the extent that it will transpire in the jury room, or forego [his] right to be free of visible restraints in front of the jury which derogate [his] presumption of innocence." *Id.* at 3 (emphasis removed); *see id.* at 14. "[T]he ominous appearing stun belt hardware" not only was plainly visible to the jurors, but also "negatively influenced" the perception of at least one juror "in colorful fashion."[1] *Id.* at 4; *see id.* at 9. "[T]his time around[,] outfitted with a stun belt that

---

[1] There was an evidentiary hearing on petitioner's § 23-110 motion in the summer of 2006, *Mungo*, 987 A.2d at 1148, at which one juror, a D.C. Department of Corrections officer, "testified that he had seen the belt, knew it to be a stun belt, and that engendered in him a strong inclination that [petitioner] was an especially bad criminal, thus the need for the belt . . . , and moreover that [petitioner] was guilty." Pet. at 9.

jurors . . . saw in plain view [during two days of jury voir dire, petitioner] was convicted." *Id.* at 2; *see Mungo*, 987 A.2 at 1149.[2]

In this action, petitioner brings a claim of ineffective assistance of appellate counsel. According to petitioner, appellate counsel's error arises from the selection of arguments presented to the District of Columbia Court of Appeals. *See, e.g.,* Pet. at 2-3, 9-10. Appellate counsel faulted the trial court for permitting and trial counsel for failing to object to the stun belt's use, *see id.* at 2, 4, even though she should have known that consideration of these issues "was foreclosed under the invited error doctrine." *Id.* at 5. "It was established pretty conclusively that it was defense counsel who engineered and brought about the stun belt arrangement so as to enable voir dire to take place in the jury room," *id.* at 9, and petitioner "cannot invite error and then complain of prejudice." *Id.* at 26 (quoting *Mack v. United States*, 310 A.2d 234, 236-37 (D.C. 1973)).

Instead, petitioner contends, appellate counsel should have raised an alternative "clearly actionable basis" for granting a new trial. Pet. at 10. He claims that "a new trial was warranted on the basis that [trial] counsel actually elicited [petitioner's] subjection to the stun belt in usurpation of certain rights (the waiver of which is the ultimate decision of the client), and that this culminated in demonstrated prejudice to [petitioner's] right to a fundamentally fair trial." *Id.* In other words, appellate counsel should have argued that trial counsel not only was ineffective but also violated his right to a fair trial by failing to obtain petitioner's express consent to use of the stun belt before offering to conduct voir dire in the jury room as an accommodation to the prosecutor. Had trial counsel properly consulted petitioner, petitioner "would have elected . . .

---

[2] "The record establishes that [petitioner and Mungo] did wear stun belts during two days of jury voir dire while they sat at one end of a table about fifteen feet away from where individual jurors were seated during their interviews." *Mungo*, 987 A.2d at 1149.

the only option that permitted him both to participate[] in selecting the jury which would decide his fate <u>and</u> to do so free of any restraints that would, <u>inter alia</u>, undermine his presumption of innocence in front of that jury." *Id*. at 23 (emphasis in original). He would have "remain[ed] in the courtroom setting for voir dire," *id.*, without "the taint of the stun belt," *id.* at 25.

Petitioner asserts that he has been denied "a fair trial [before an] impartial jury . . . on account of his trial counsel's deficient representation and because his appellate counsel failed to assign error thereto." *Id.* at 29. He requests "a writ of habeas corpus vacating his conviction" because "that conviction was obtained in violation of his [c]onstitutional rights under the Fifth Amendment to a fundamentally fair trial and under the Sixth Amendment to effective assistance of counsel." *Id.* at 1.

## II. DISCUSSION

Petitioner may bring a claim of ineffective assistance of appellate counsel in federal district court. *See Williams v. Martinez*, 586 F.3d 995, 998-99 (D.C. Cir. 2009), *cert. denied*, 130 S. Ct. 2073 (2010). In assessing such a claim, the Court applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984),[1] which in the appellate context has been stated as follows:

---

[1] Under *Strickland*, a petitioner claiming ineffective assistance of trial counsel must show:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

> [Petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citations omitted); *see Williams v. Martinez*, 683 F. Supp. 2d 29, 32 (D.D.C. 2010) ("To show ineffective assistance of appellate counsel, [petitioner] must show that his appellate counsel's performance was (1) deficient and (2) prejudiced his defense such that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal quotation marks and citation omitted). "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance,* 556 U.S. 111, 124 (2009) (quoting *Strickland,* 466 U.S. at 689). "Failure to make the required showing of *either* deficient performance *or* sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700 (emphasis added); *see Smith*, 528 U.S. at 288 ("In sum, Robbins must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel."). Here, then, petitioner must demonstrate that appellate counsel's failure to pursue an ineffective assistance of trial counsel claim – on the ground that trial counsel subjected petitioner to the stun belt without first securing his consent in violation of his Fifth Amendment right to a fair trial – was itself deficient and prejudicial.

Appellate counsel not only addressed the use of the stun belt on direct appeal but also included a claim of ineffective assistance of trial counsel.[3] The District of Columbia Court of Appeals summarized the arguments as follows:

> Acknowledging that their trial counsel neither objected to use of the stun belts nor asked the court to consider other security options, appellants now argue that the trial court plainly erred in directing or permitting use of the belts without making findings on the record to justify use of the devices. They also argue that their lawyers provided ineffective assistance by their failure to object to use of the stun belts, to propose alternatives, to ensure that the belts were not visible to jurors, to ensure that the court made relevant findings, and to ensure that the Marshal's Service rules for use of stun belts were followed.

*Mungo*, 987 A.2d at 1149. The Court of Appeals was not persuaded, however, "that the trial court plainly erred in permitting the use of stun belts during the jury voir dire proceedings." *Id.* at 1150. Nor did the Court of Appeals find error "in the trial court's denial of [petitioner's] ineffective assistance claims premised on [his counsel's] failure to object to the use of stun belts." *Id.* Furthermore, it was reasonable to view "defense counsel's willingness to accept the use of stun belts in conjunction with voir dire in the jury room [as] a tactical decision by counsel," the objective of which was to allow petitioner and Mungo to be involved in the jury selection process. *Id.* at 1150.

The Court of Appeals has concluded not only that trial counsel's performance was not deficient, but also that the same issues petitioner raises in this action "were addressed and rejected in [its] opinion affirming his convictions." Pet., Attach. (Order, *Peete v. United States*, Nos. 00-CF-1145 & 09-CF-237 (D.C. Ct. App. June 22, 2011) (denying motion to recall mandate)). Furthermore, the Court of Appeals found that petitioner "has failed to demonstrate

---

[3]   Appellate counsel also raised the stun belt issue in a post-conviction motion in the Superior Court under D.C. Code § 23-110. *See* Pet. at 2. Appeal of the § 23-110 ruling was consolidated with the direct appeal of petitioner's convictions. *See Mungo*, 987 A.2d at 1148.

6

that appellate counsel was constitutionally ineffective. *Id.* This Court concurs.

Appellate counsel "need not (and should not) raise every nonfrivolous claim," but rather "may select from among them in order to maximize the likelihood of success on appeal." *Smith,* 528 U.S. at 288 (citing *Jones v. Barnes,* 463 U.S. 745 (1983)). No "indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones*, 463 U.S. at 751. Petitioner, in hindsight, objects to the use of the stun belt and attributes his subsequent conviction to the negative inference the jurors must have drawn from the stun belt. The use of the stun belt and its potentially prejudicial effects were the bases of the direct appeal and post-conviction motion, and appellate counsel clearly raised these issues in the District of Columbia courts. Her performance, therefore, was not deficient. Even if appellate counsel's performance had been deficient, petitioner does not demonstrate that there was "a reasonable probability that, but for counsel's professional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 693-94. His assertion that, "without the taint of the stun belt (which the jury would not have seen but for counsel's unauthorized voir dire move), the jury would have done as did the jury in the first trial – lock 11 to 1 in favor of acquittal," Pet. at 25, is mere speculation.

### III.  CONCLUSION

The petitioner's habeas petition must be denied, and this action will be dismissed. An Order accompanies this Memorandum Opinion.

EMMET G. SULLIVAN
United States District Judge

DATE:  April 29, 2013